WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-02057-001-TUC-RCC (LAB) |
| Plaintiff, | **ORDER** |
| v. | |
| Juan Carlos Paz-Othon, | |
| Defendant. | |

Before the Court is Defendant Juan Carlos Paz-Othon's Amended Motion Requesting Compassionate Release. (Doc. 33.)[1] The Court has considered the parties' briefings and denies Paz-Othon's motion.

**I.   Factual and Procedural History**

  *a. Underlying Conduct and Sentence*

On October 10, 2018, Paz-Othon was charged with six counts related to a drug trafficking incident. (Presentence Report ("PSR") at ¶ 1.) On December 18, 2018, Paz-Othon pleaded guilty to Count 5: Importation of 7.94 kg of cocaine, and Count 6: Importation of 15.98 kg of a detectable amount of methamphetamine. (*Id.* at ¶¶ 1–2.) In addition to the instant offense, Paz-Othon admitted he had been paid at least two other times to transport drugs. (*Id.* at ¶ 5.)

Paz-Othon's plea agreement permitted a sentencing range of 87–108 months'

---

[1] Paz-Othon previously filed a pro se motion for compassionate release. (Doc. 25.) Because "[a]n amended motion supersedes an original motion" and "after amendment, the Court [treats] an original motion as nonexistent," the Court will deny the pro se motion as moot. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

incarceration. (*Id.* at ¶ 2.) Without the plea agreement, the PSR found Paz-Othon was a criminal history category I and the total offense level was 33, resulting in a Guidelines range of 135–168 months' incarceration. (*Id.* at ¶ 43.) The PSR noted that "[a]lthough the defendant was transporting significant quantities of cocaine and methamphetamine into the United States, . . . it would appear that the scope of his involvement was minimal and that his participation in the offense was that of a drug courier with little stake in the potential profits from the distribution of the drugs." (*Id.* at p. 10.) The PSR also commented that Paz-Othon had suffered from a heart attack. (*Id.* at ¶ 9.) Unable to work per doctor's orders, and after accumulating a substantial debt on the family home, Paz-Othon decided to transport drugs for money to pay for his house and the family's debts. (*Id.*; Doc. 19 at 2.)

On March 22, 2019, the Court granted a variance based on the nature and circumstances of the offense and Paz-Othon's lack of criminal history, (Statement of Reasons, Doc. 23 at 3), and sentenced Paz-Othon to 40 months' incarceration for both Counts 5 and 6 to run concurrently, followed by three years of supervised release. (Doc. 24.)

### b. *Compassionate Release Motion*

Paz-Othon asserts that his various ailments create extraordinary and compelling circumstances warranting early release. He has suffered from Coronary Artery Disease, hypertension, hyperlipidema, Type-2 diabetes, and obesity. (Doc. 33 at 2.) He already tested positive for Covid-19 in August 2020. (*Id.*) Since contracting Covid-19, Paz-Othon has been experiencing shortness of breath and dizziness. (*Id.*) He claims he may have a more severe response should he contract a variant of Covid-19 in the future. (*Id.*) Thus far, Paz-Othon has served about 85 percent of his sentence. (Doc. 34 at 2.) Paz-Othon's current release date is July 17, 2021. (*Id.* at 2.)

## II. Standard of Review

Paz-Othon's motion is brought under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The statute allows a court to modify a term of imprisonment upon a motion from the

defendant when: (1) the defendant has exhausted his administrative remedies; (2) the court has considered the section 3553(a) factors; and (3) the court finds that (i) "extraordinary and compelling reasons warrant such a reduction," or that (ii) the defendant is 70 or over, has been imprisoned at least 30 years, and has been found not to present a danger to the community. 18 U.S.C. § 3582(c)(1)(A). The reduction must also be "consistent with [the Sentencing Commission's] applicable policy statements." *Id.*

### III.  Administrative Remedies

The Government concedes that Paz-Othon has exhausted his administrative remedies. (Doc. 46 at 7.) The Court agrees.

### IV.  Extraordinary and Compelling Reasons for Release

Reducing a sentence under the compassionate release statute is reserved for "compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." *See* 28 C.F.R. § 571.60 (2000). The U.S. Sentencing Guidelines' Application Note § 1B1.13 explains that "extraordinary and compelling" reasons may exist due to:

> (A) the medical condition of the defendant; (B) the age of the defendant; (C) family circumstances, including "death or incapacitation of the caregiver of the defendant's minor child"; and (D) other reasons, as determined by the Director of the Bureau of Prisons, that amount to an extraordinary and compelling reason "other than, or in combination with, the reasons described in subdivisions (A) through (C)."

*United States v. Foster*, No. 3:18-CR-00307-HZ-1, 2020 WL 5876941, at *1 (D. Or. Oct. 2, 2020) (quoting U.S.S.G. §1B1.13 app. n.1(A)–(D)). Although not required of the district courts, these guidelines may offer persuasive reasons for finding an inmate's circumstances extraordinary and compelling. *United States v. Aruda*, ---F.3d---, 2021 WL 1307884, at *4 (April 8, 2021). Nevertheless, it is rare to receive a sentence reduction because of a medical issue. *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *2 (D. Ariz. June 27, 2019). Moreover, the existence of the Coronavirus and its potential to infect inmates at a particular prison is not enough, alone, to reduce a sentence under the

compassionate release statute. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). However, in some instances, the Coronavirus has been found to be an extraordinary and compelling circumstance when combined with other risk factors. *See Foster*, 2020 WL 5876941, at *3 (finding extraordinary circumstances and granting early release due to the combination of defendant's asthma, upper respiratory illnesses, and existence of Covid-19 cases within FCI-Dublin); *see also United States v. Marty*, No. 2:13-CR-0217 KJM, 2020 WL 7425338, at *3 (E.D. Cal. Dec. 18, 2020) (determining Covid-19, asthma, and other health risks posed extraordinary circumstances).

The Government agrees that Paz-Othon's various health conditions raise extraordinary and compelling reasons for release. (Doc. 34 at 6–7.) The CDC recognizes diabetes, obesity, and Coronary Artery Disease are factors that increase the likelihood of severe illness from Covid-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 22, 2021). Moreover, Paz-Othon is unlikely to recover from these conditions while incarcerated and these ailments limit his ability to provide self-care while incarcerated. Therefore, the Court finds Paz-Othon presents an extraordinary and compelling circumstance.

## V.     § 3553(a) Factors

The Court must also weigh the § 3553(a) factors to determine whether release is proper, even if an inmate has presented a compelling and extraordinary case for early release. *See* 18 U.S.C. § 3582(c)(1)(A). The § 3553(a) "factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013).

Paz-Othon claims that his sentence unjustly exposes him to a potential death sentence from Covid-19. (Doc. 33 at 12.) He details the restrictive measures the Bureau of Prisons has taken to prevent the spread of Covid-19 and claims the circumstances constitute, in essence, 24-hour lockdown. (*Id.* at 14; Doc. 35 at 2.) He compares these measures to prison conditions "ordinarily imposed upon some of the most dangerous types of defendants." (Doc. 35 at 6.) These harsh conditions have served the purpose of deterring Paz-Othon "from ever engaging in any offense." (*Id.* at 6.) He also claims he poses no danger to the community. (Doc. 33 at 14.) He notes his offense was nonviolent, he has no criminal history, and he has completed most of his 40-month sentence. (*Id.*) Upon release, Paz-Othon anticipates being deported to his home in Hermosillo to live with his wife, children, and grandchildren. (Doc. 25-1 at 2.) He states there he can breed deer, sell agricultural products, and work as a farmer. (*Id.* at 3; Doc. 35 at 6.) Additionally, he believes his family would benefit from his presence, as his wife is suffering from uterine cancer and his daughter is at the university and in need of financial assistance. (Doc. 25-1 at 6.)

The government responds that even though Paz-Othon was convicted of a non-violent offense and has no criminal history, he remains a danger to society because of the large quantity of drugs he transported and the fact he admitted to prior drug trafficking. (Doc. 34 at 7–9.) In addition, the Government believes he is likely to repeat these offenses because the reasons he transported drugs still remain, and his medical conditions did not previously serve as a deterrent. (*Id.* at 9.) Moreover, reducing Paz-Othon's sentence would not "reflect the seriousness of the offense, or afford adequate deterrence to criminal conduct" because his Guidelines range has already been significantly reduced. (*Id.* at 9–10.)

    a. *Dangerousness*

The Court may weigh the dangerousness of a defendant upon release, but it is not a requirement. *See Aruda*, ---F.3d---, 2021 WL 1307884, at *4 ("The Sentencing Commission's statements in U.S.S.G. § 1B1.13 [requiring a defendant not pose a danger to

the community] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding.").

The Government's contention that Paz-Othon is a danger to the community because of the amount of drugs he was convicted of is not supported by its cited cases. *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) (mail fraud poses pecuniary danger); *United States v. Gentry*, 455 F. Supp. 2d 1018, 1032 (D. Ariz. 2006) (unemployed defendant with no assets may pose economic danger upon release). Moreover, neither case addresses dangerousness as it relates to a defendant subject to deportation. Should Paz-Othon repeat his past offenses, this does not pose a physical, economic, or pecuniary risk to society. In addition, Paz-Othon has presented a plan for employment in Mexico, has a degree in Administration Ranches and Agricultural Fields (PSR at ¶ 38), has carpentry experience, and hopefully will become a contributing citizen upon return.

Nor is *United States v. Perez*, No. CR-18-007778-PHX-DGC, 2021 WL 24584 (D. Ariz. Jan. 4, 2021) determinative. Although both Paz-Othon and Perez admitted to transporting drugs on multiple occasions, Perez had served less than half of his below-Guidelines sentence. Here, Paz-Othon has served approximately 85 percent of his sentence. And Paz-Othon has no criminal history, unlike Perez who had "a history of domestic violence and noncompliance with the law and court orders." *See Perez*, 2021 WL 24584, at *5.

Moreover, the Bureau of Prison's Grievance Response, denied release not based on the danger Paz-Othon posed to society, but because he "has a detainer with ICE with no legal status to remain in the United States" and with an aggravated felony conviction, he "will be processed by ICE upon completion of [his] current sentence and transferred to an Immigration Detention Center where it will be determined whether or not [he] will be [deported]." (Doc. 25-5.)

  b. *Sentencing Factors*

However, the Government is correct that Paz-Othon has already benefitted from a significant reduction in his sentence due to the § 3553(a) factors. At the high end of Paz-

Othon's possible sentence, the large quantity of drugs Paz-Othon was transporting exposed him to 168 months of incarceration. The plea agreement offered a departure from this range, and the Court granted a variance, reducing his sentence to a mere 40 months, of which Paz-Othon has completed only about 85%. An additional three-month reduction creates a substantial sentencing disparity, undermines the purposes of sentencing, and reduces a sentence which is already substantially lower that similarly situated defendants. Moreover, Paz-Othon has already survived a bout of Covid-19, undermining his contention that further incarceration and possible infection would be life-threatening. The Court finds that the § 3553(a) factors weigh against granting a reduction in sentence.

Accordingly, IT IS ORDERED:

1) Juan Carlos Paz-Othon's Amended Motion Requesting Compassionate Release is DENIED. (Doc. 33.)
2) Defendant's Pro Se Motion for Compassionate Release is DENIED AS MOOT. (Doc. 25.)

Dated this 22nd day of April, 2021.

_____
Honorable Raner C. Collins
Senior United States District Judge